IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | |
| | : | NO.  25-183-GAW 1 |
| DADISI WILLIAMS (1) | : | |

### MEMORANDUM OPINION

I.  Introduction

On December 16, 2025, this Court entered an Order and an accompanying Opinion finding that the Government's seizure of Defendant Dadisi Williams's cell phone was unlawful, that the warrant to search the phone lacked probable cause and was unreasonable in scope. (Dkt. # 82, 83). As a result of this ruling, the evidence obtained from this improper seizure and search was suppressed. As part of its ruling, this Court scheduled a hearing to discuss what additional evidence, if any, should be excluded as fruit of the poisonous tree.[1] On December 20, 2025, the Government filed with the Court a brief arguing that neither Mr. Williams's custodial statements nor the Government's search of Co-Defendant Tyler Nichols's cell phone should be suppressed (Dkt. #93).

On December 22, 2025, the Court held a hearing to address the effect of its prior ruling on other evidence during which Williams's custodial statement and the

---

[1] The material excluded from the improper seizure and search of Defendant Williams's cell phone was also the foundational information for his arrest warrant. Subsequent to the execution of his arrest warrant, after being properly Mirandized, Defendant Williams gave a custodial statement admitting his own culpability in the crimes charged. This statement became a material fact in other search warrants.

1

search of co-Defendant, Nichols's cell phone were the focus. The Government echoed its well-founded briefing on the topic. Defendant Williams argued that his custodial statement should be excluded as it was the result of an arrest warrant which lacked probable cause.[2] Defendant Williams then argued that if the custodial statements were excluded, the warrant to search Nichols's phone was insufficient as to Defendant Williams. His argument was based on the contention that once the custodial statements were struck from the application, the warrant lacked probable cause. Counsel for Mr. Williams conceded at the hearing that if the Court were *not* to strike the custodial statements, the Nichols cell phone warrant would be adequately supported by probable cause. The Court invited Defendant Williams to file a written reply to the Government's supplemental submission within a reasonable time of the hearing, offering counsel the opportunity to ensure he need not work over the holiday weekend. Counsel ultimately submitted a written response to the Court stating his intention to rest on the arguments made in his initial filing and during the hearing.

## II. Defendant Williams's custodial statements are not suppressed as fruit of the poisonous tree.

The first issue the Court must consider is whether the custodial statements of Defendant Williams must be excluded as fruit of the poisonous tree of the unlawful seizure and search of his cell phone. According to the briefing and arguments of the parties, the arrest warrant in this case was issued on January 9, 2025, and Mr. Williams was arrested in his home the next morning. The next day, he was brought

---

[2] Counsel for Defendant Williams showed great candor in conceding that the only potential issue with the custodial statements was the impropriety of the arrest warrant, and that Defendant Williams was properly advised of his Miranda rights and not otherwise coerced into making those statements.

to the offices of the FBI, properly advised of his *Miranda* rights, and made a statement admitting his guilt.

Defendant Williams's argument is that when the unlawfully obtained evidence is struck from the January 9, 2025 arrest warrant issued for his arrest, that arrest warrant lacks probable cause. Therefore, he argues, his later custodial statements are built upon suppressed evidence and therefore barred as fruit of the poisonous tree.

The threshold inquiry, therefore, is whether the arrest warrant has probable absent the suppressed cell phone evidence. This Court will not write extensively on that subject,[3] but agrees with Defendant Williams that, once the excluded cell phone evidence is excised from the arrest warrant, the remaining information within the four corners of the warrant linking Defendant Williams to the offense consists solely of the same evidence that both detectives involved in this matter concluded did not establish probable cause at the time Mr. Williams was initially contacted outside his residence in November 2024. While more than sufficient to justify a *Terry* stop, this Court finds that being in control of a vehicle matching the description of the one used in one of the robberies while wearing an extremely common sweatshirt worn by one of the offenders in one of the robberies could not, without more, justify his arrest and detention for a period of time which (if Defendant Williams could not afford bail) could potentially last the more than a year awaiting the commencement of trial.

---

[3] As this Court finds *infra* that the statements are admissible despite the arrest warrant's lack of probable cause.

The problem with Defendant Williams's argument in this case is the Court's important *caveat* in its prior paragraph: "without more." The evidence and testimony in this case shows that the unchallenged search of Defendant Williams's vehicle yielded additional evidence known by police at the time of his arrest. Specifically, the search of the vehicle found a police scanner (which witnesses at several of the robberies reported was in the possession of the robbers), a reflective construction vest (similar to one which was worn during one of the robberies) and a black balaclava mask (similar to the ones worn by the robbers as seen in surveillance footage). Counsel for Defendant Williams conceded at the suppression hearing that inclusion of that information in the arrest warrant would likely have created probable cause. This Court agrees with the Government and with Defendant Williams's concession. The officers did an poor job in drafting the warrant application, presumably assuming that the unlawfully obtained cell phone data would be admissible and that there was no reason to go very far beyond that data. But considering all the information the police knew at the time the arrest was made, despite it not being included in the arrest warrant, the officers did have probable cause to believe he committed a felony.

The presence of probable cause in this case brings the analysis of Defendant Williams's custodial statements squarely in the province of the Supreme Court's decision in *New York v. Harris*. 495 U.S. 14 (1990). In *Harris*, the police arrested the defendant warrantlessly in his own home, violating the Supreme Court's 1980 decision in *Payton* prohibiting such an arrest. *Id.* at 17. But the Supreme Court also observed that there is no general requirement that police obtain an arrest warrant to

4

arrest someone in public for a felony. *Id.* at 17-18. Because the police in *Harris* had probable cause for the defendant's arrest but did not have a warrant, there was surely something wrong with *how* he was arrested. But there was nothing unlawful about his being in custody. *Id.* at 18. The Court summarized its holding that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton*." *Id.* at 21.

This Court has carefully searched the facts and circumstances in this case for any which might distinguish it from *Harris*, but has found none. Nor has Defendant Williams done so, either at the hearing or by way of the Court's invitation to submit supplemental briefing. This case is on all fours with *Harris*,[4] as the police had probable cause to arrest Defendant Williams in public, and therefore his detention was proper, even if the procedure surrounding his arrest was not. Therefore, Defendant Williams's custodial statements were sufficiently attenuated from the inadequate arrest warrant, and admissible under *Harris*.

### III. Text messages obtained from the search of Co-Defendant Nichols's cell phone are admissible.

The other category of evidence addressed by the Parties at the hearing is a collection of text messages which were first obtained pursuant to the unlawful search of Defendant Williams's phone, but later obtained from his Co-Defendant's cell phone

---

[4]  In fact, arguably the Government conduct here is *less* blameworthy than in *Harris*. Here, the officers at least obtained a warrant which facially seemed to create probable cause, and only was suspect after a later motion before this Court.

pursuant to a warrant obtained by the FBI. At the hearing on December 20, 2025, counsel for Defendant Williams conceded that probable cause existed to search Defendant Nichols's phone if Defendant Williams's custodial statements are not suppressed. This Court agrees. The warrant authorizing the search of Defendant Nichols's phone is supported by adequate probable cause when Defendant Williams's custodial statements are considered. The warrant to search Nichols's phone is supported by adequate probable cause when considering Defendant Williams's custodial statements.[5] When those custodial statements are included, the Court finds that the totality of the information established a "fair probability that … evidence of a crime will be found" in the data contained on Defendant Nichols's phone. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). When Defendant Williams's custodial statements are added into the mix, this Court finds that the information provided created a "fair probability that… evidence of a crime will be found" in the data from Defendant Nichols's phone. *See Illinois v. Gates,* 462 U.S. 213, 238 (1983). Because this Court is not suppressing the custodial statements (*see supra*), the communications obtained from Defendant Nichols's phone pursuant to the FBI warrant are admissible against both Defendant Nichols and Defendant Williams.

  This Court still harbors serious doubts about the Constitutional validity of the breadth of the search of the devices performed by the FBI. On its face, the warrant permits searches of basically any data from any time found on any app on the phone.

---

[5]  Because Defendant Williams has conceded that probable cause supports the warrant to search Nichols's phone if the custodial statements were not ultimately excluded, this Court will not articulate at length the nature of those statements and their impact on the warrant to search Nichols's phone.

While this Court credits and appreciates the testimony of the Government's witness that he self-imposed limits to ensure he would only be looking in places where he thought there may be evidence, the public's interest against generalized warrants cannot be adequately safeguarded by the Honor System.

This Court has already done a careful analysis and held that once probable cause is established for *this particular* search warrant, the good faith exception applies and saves the warrant from an overbreadth challenge under these circumstances. See *United States v. Nichols,* No. CR 25-183-GAW-2, 2025 WL 3641837, at *2 (E.D. Pa. Dec. 16, 2025) (analyzing same warrant application in response to Defendant Nichols's motion to suppress). Further, even if the good faith requirement did not apply and this Court was therefore forced to go through the process of narrowing the FBI warrant to an acceptable breadth, the communications which appear to be at issue here would be well within the scope of the warrant after that narrowing occurred. Therefore, while information which was solely obtained from Defendant Williams's device remained suppressed,[6] information which was also obtained from the search of Defendant Nichols's phone is not.

---

[6] At the December 20, 2025 hearing, the Government suggested that if this Court were to admit the evidence found by way of the search of Nichols's device, information such as GPS data for Defendant Williams (obtainable solely from Defendant Williams's device) would remain suppressed by the Court's previous order, while text messages and other communications between Defendants Williams and Nichols (which were correspondingly found on Defendant Nichols's devices) would be admissible. At a high level of generality, this Court thinks the Government's suggestion is a fair synthesis of this Court's decisions today and on December 16, 2025. To the extent there is any grey area remaining as to any particular piece of evidence, the Court encourages the Parties to discuss among themselves and reach a consensus, and to bring any unresolvable issues to the Court's attention at the final Pre Trial Conference.

## IV. Conclusion

Defendant Williams meritoriously moved for (and prevailed on) his motion to suppress, and a large quantity of evidence against him has been excluded. That sanction was appropriate under the law, and carefully balanced against the interest of the public in the criminal prosecution of this case. Notwithstanding the zealous and excellent advocacy of counsel for Defendant Williams, that success has its limitations. Defendant Williams's custodial statements are admissible under *Harris*, and therefore the information from Defendant Nichols's phone is adequately supported by probable cause and admissible against Defendant Williams as well, upon the laying of a proper foundation.

DATED: December 29, 2025          BY THE COURT:

_____
GAIL WEILHEIMER          J,